**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael King, et al., | No. CV-23-00196-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| DePuy Orthopaedics Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion and Memorandum of Law in Support of Motion to Strike Stephen Li (Doc. 111). Plaintiffs filed a response (Doc. 118), to which Defendants filed a reply (Doc. 121). Defendants also filed a Notice of Supplemental Authority in Support of Their Motion to Strike Stephen Li (Doc. 126). For the reasons outlined below, the Court will grant Defendants Motion to Strike.

**I.     BACKGROUND**

This Court has previously described the background of this case (Doc. 107) but for ease of reference will repeat it here. This case arose out of the installation of an allegedly defective "metal-on-metal" hip replacement manufactured, marketed, and sold by Defendants. This hip replacement is known as the Pinnacle Acetabular Cup System (hereinafter "device"). The device is used to replace diseased hip joints and was intended to remedy conditions such as osteoarthirits, rheumatoid arthritis, avascular necrosis, or fracture. It also sought to provide patients with pain-free natural motion over a longer period than other hip replacement devices.

The device is composed of four components: "the metal femoral stem, which is inserted inside the femur bone; the metal femoral head (or ball), which connects to the top of the stem; the metal acetabular cup or shell (socket), which attaches to the pelvis; and the liner, which sits inside the acetabular cup." (Doc. 17 at 7.) The acetabular cup is made of titanium, while the liner is made of either plastic, ceramic, or cobalt-chromium, depending on the patient. This case involves an implant with a cobalt-chromium lining and is referred to as a metal-on-metal ("MoM") device. The MoM description designates devices containing the cobalt-chromium liner because "both articulating surfaces—the femoral head (ball) and the acetabulum liner (socket)—are comprised of cobalt-chromium metal." (*Id.*)

Plaintiffs allege the friction between these two components releases cobalt-chromium metal particles. The resulting particles then accumulate in the patient's surrounding tissue and end up in the patient's bloodstream. This in turn can lead to metallosis, biological toxicity, pseudotumors, infection, inflammation, and an early and high failure rate of the device. (*Id.* at 6.) Plaintiffs also allege that the metal components corrode inside the body, leading to many of the same ailments. (*Id.* at 10.)

On June 28, 2010, Plaintiff Michael King underwent a total hip arthroplasty procedure in Mesa, Arizona and had a MoM device implanted in his left hip. After the procedure, Plaintiff alleges that the friction between the cobalt-chromium components caused metal ions and particles to be released into his blood, tissue, and bone surrounding the implant, resulting in severe pain, discomfort, and inflammation. Because of his symptoms, Plaintiff underwent a second surgery to replace the device on January 10, 2014.

Plaintiffs filed suit alleging negligence, strict liability, fraud, negligent misrepresentation, and breach of warranty claims. (*See* Doc. 17.) In addition, Mr. King's wife, Deborah King, filed a loss of consortium claim. (*See id.*) The case was initially filed in the United States District Court for the Northern District of Texas as part of the multi-district litigation against Defendants coordinated out of that District. This case was not selected as one of the bellwether cases. *See In re: DePuy Orthopaedics, Inc.*, MDL Docket

No. 3:11-MD-2244-K, 2016 WL 6271474, at *1 (N.D. Tex. Jan. 5, 2016). Therefore, it was consolidated for purposes of discovery and pretrial matters. *See id.*; 28 U.S.C. § 1407. Litigation continued in the bellwether cases, resulting in substantial fact and expert discovery. This case was transferred to the District of Arizona on December 30, 2022. (Doc. 41.)

The Court previously excluded Dr. Stephen Li from testifying as an expert witness for Plaintiff primarily due to his previous service as a consulting expert for Defendant DePuy in related litigation. (Doc. 107 at 12–15). Plaintiff now wants to use Dr. Li not as an expert witness, but rather as a fact witness to testify about his comments to a 2001 FDA Advisory Panel related to MoM implants (the "2001 Orthopedic Panel"). (Doc 111-2.). In response, Defendants now move to strike Dr. Li as a witness entirely. (Doc. 111.)

## II.   DISCUSSION

Defendants argue that in having Dr. Li testify, Plaintiffs are attempting to repackage his expert testimony on "the materials, design, testing, and clinical results of hip implants" as lay opinion testimony because they cannot introduce it as expert testimony. (Doc. 111 at 5.) Plaintiffs counter that they are not attempting to circumvent the Court's prior ruling, but instead are wanting Dr. Li to give purely fact testimony "on the limited issue of who he is, what the FDA asked him to do with respect to the 2001 Orthopedic Panel, the discussions of the Panel and other Panel members, and the decisions ultimately rendered," which he has personal knowledge of. (Doc. 118 at 2–3.)

Defendants more specifically argue that Dr. Li's proffered testimony is inadmissible hearsay because it "[is] clearly 'statements made out of court and offered in court to prove the truth of the matter asserted.'" (Doc. 111 at 5) (quoting *Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC*, No. CV-17-01688-PHX-DWL, 2020 WL 587841, at *4 (D. Ariz. Feb. 5, 2020)). They next argue that his testimony is not just based on his personal knowledge, but rather based on "technical, scientific, and other specialized knowledge" which requires expert qualification and does not meet the Rule 701 standard the Court must apply here. (*Id.* at 5–6.) The Court will address these arguments in turn.

First, as to Defendants' hearsay argument, the Court agrees.  Plaintiff asserts that Dr. Li's testimony regarding his discussions with the 2001 Orthopedic Panel is not being offered to prove that Defendants' hip implant was defective—but instead is being offered to provide notice of issues regarding hip implants. (Doc. 118 at 6.) But the Court does not see this distinction and does not believe a jury will either.  Testimony putting parties on *notice* of issues with MoM hip implants in this context appears to be the same as testimony attempting to *prove* those issues.  *See Wilson v. Maricopa Cnty.*, No. CV-04-2873 PHX-DGC, 2007 WL 1992091, at *12 (D. Ariz. July 5, 2007) (rejecting argument that testimony being offered was for notice when the party "clearly sought to admit . . . [it] for the truth of the matter asserted."); *Hendricks v. Ford Motor Co*., No. 4:12cv71, 2012 WL 4478308, at *2 (E.D. Tex. Sept. 27, 2012) ("Plaintiff cannot avoid hearsay issues by arguing that the evidence is being offered to show only Defendant's knowledge of the truth of the matters asserted in the reports.").

Second, the Court also finds that Dr. Li's discussions with the 2001 Orthopedic Panel, as Defendants point out, revolved around his specialized knowledge outside the scope of what a lay witness would know.  (Doc 111-4.)  Federal Rule of Evidence 701 governs non-expert, or lay opinion, testimony.  Under Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Lay opinion testimony functions separate and apart from expert opinion testimony and should "not . . . provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1101 (D. Ariz. 2019) (internal quotation marks omitted) (quoting *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006)).

In the proffered testimony here, Dr. Li describes himself as a "materials and design

person" and discusses the difference between wear debris from MoM and polyethylene-based implants. (*Id.* at Doc. 11-4 at 67.) This testimony largely overlaps with what Dr. Li would have testified about had he been qualified as an expert. The Court also agrees with Defendant that these are also not "matters within the common understanding of lay jurors." (Doc. 111 at 6); *see also United States v. Dave*, 314 F. App'x 40, 41 (9th Cir. 2008) ("[I]t is error to permit a lay witness to offer an opinion on a subject that only a qualified expert can render."). Therefore, Dr. Li's testimony is inadmissible under Rule 701.

Additionally, allowing Dr. Li to testify as a lay witness has a high propensity to confuse the jury. *See McCoy v. DePuy Orthopaedics, Inc.*, No. 1:22-cv-2075-JLS (SBC) (S.D. Cal. Nov. 8, 2023.) (Doc. 126-1at 6.) Although Dr. Li would not be testifying as both a lay and an expert witness, his status *as* an expert in the field of hip implants "could lend . . . unmerited credibility when testifying as a percipient witness." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014). Finally, because the Court finds Dr. Li's testimony as a lay witness inadmissible for the reasons explained above, it will not address the parties' arguments on the testimony's relevance. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Because Dr. Li's testimony is inadmissible hearsay, inadmissible under Rule 701, and has the propensity to confuse the jury, the Court will not allow Dr. Li to be a fact witness.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion and Memorandum of Law in Support of Motion to Strike Stephen Li (Doc. 111.)

Dated this 15th day of December, 2023.

Honorable Susan M. Brnovich
United States District Judge