**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael King, et al., | No. CV-23-00196-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| DePuy Orthopaedics Incorporated, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion to Strike Case-Specific Opinions of Scott D. Nelson, M.C., Ph.D. (Doc. 177). Defendants filed a response (Doc. 184), to which Defendants filed a reply (Doc. 187). For the reasons outlined below, the Court will grant Plaintiffs' Motion to Strike.

**I.    BACKGROUND**

This Court has previously described the background of this case (Doc. 107) but for ease of reference will repeat it here. This case arose out of the installation of an allegedly defective "metal-on-metal" hip replacement manufactured, marketed, and sold by Defendants. This hip replacement is known as the Pinnacle Acetabular Cup System (hereinafter "device"). The device is used to replace diseased hip joints and was intended to remedy conditions such as osteoarthirits, rheumatoid arthritis, avascular necrosis, or fracture. It also sought to provide patients with pain-free natural motion over a longer period than other hip replacement devices.

On June 28, 2010, Plaintiff Michael King underwent a total hip arthroplasty

procedure in Mesa, Arizona and had the device implanted in his left hip. After the procedure, Plaintiff alleges that the friction between the cobalt-chromium components caused metal ions and particles to be released into his blood, tissue, and bone surrounding the implant, resulting in severe pain, discomfort, and inflammation. Because of his symptoms, Plaintiff underwent a second surgery to replace the device on January 10, 2014.

Plaintiffs filed suit alleging negligence, strict liability, fraud, negligent misrepresentation, and breach of warranty claims. (*See* Doc. 17.) In addition, Mr. King's wife, Deborah King, filed a loss of consortium claim. (*See id.*) The case was initially filed in the United States District Court for the Northern District of Texas as part of the multi-district litigation against Defendants coordinated out of that District. This case was not selected as one of the bellwether cases. *See In re: DePuy Orthopaedics, Inc.*, MDL Docket No. 3:11-MD-2244-K, 2016 WL 6271474, at *1 (N.D. Tex. Jan. 5, 2016). Therefore, it was consolidated for purposes of discovery and pretrial matters. *See id.*; 28 U.S.C. § 1407. Litigation continued in the bellwether cases, resulting in substantial fact and expert discovery.

As part of this discovery in September 2019 the MDL court entered Case Management Order ("CMO") 12, which required Plaintiffs to issue notices to doctors and medical facilities to preserve treatment records including devices, tissue blocks and pathology blocks from five years before the surgery date. (Doc. 177-2.) Plaintiffs also had to provide Defendants with a list of entities/individuals who received a notice. (*Id.*) This CMO became effective for the first quarter of 2021, at which point Plaintiffs sent these preservation notices in May 2021. (*Id.*) In July 2021, Plaintiffs provided Defendants with Plaintiff King's medical records, and the list of entities/individuals who received a preservation notice as the CMO required. (Doc. 177 at 4.) In November 2022, the parties produced their respective expert disclosures. (*Id.* at 5.)

In December 2022, this case was transferred to the District of Arizona to be heard before this Court. (Doc. 41.) In February 2023, after this transfer, the parties appeared for a status conference to discuss, in part, expert witnesses. (Doc. 177-4 at 5.) There,

1  Defendants informed the Court that their only case-specific expert would be Dr.
2  Ebramzadeh. (*Id.*) The parties met again before this Court in August 2023 for a *Daubert*
3  conference, again in October 2023 where Defendants' motion to continue the trial was
4  granted, and once more in in December 2023 for a status conference. (*Id.*) On April 15,
5  2024, the parties met for another status conference at which time the Court set the pre-trial
6  deadlines. (Doc. 153.) Defendants did not mention any outstanding expert discovery.
7  (Doc. 177 at 6.) However, on April 19, 2024, Defendants provided Plaintiffs with Dr.
8  Nelson's pathology report containing case-specific opinions regarding Plaintiff King's
9  injuries, and cause of injuries. (Doc. 177-5.) Defendants did notify Plaintiffs about the
10 reason for delay at that time. (*Id.*)

Plaintiffs now bring this Motion under Rule 26(a)(2) of the Federal Rules of Civil Procedure, asserting that the Court must strike Dr. Nelson's case-specific opinions for failing to comply with the MDL and this Court's scheduling orders. (Doc. 177 at 7.)

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2) provides, in relevant part:

> (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705 . . .
> (C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); *Cooke v. Town of Colorado City*, No. CV 10-08105-PCT-JAT, 2013 WL 551508, at *3 (D. Ariz. Feb. 13, 2013). Litigants must disclose all expert witnesses "at the times and in the sequence that the court orders."

1   *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) (internal citation
2   omitted.).  Rule 37(c)(1) is an "automatic" sanction that prohibits the use of improperly
3   disclosed evidence and—as stated by the rule—litigants may only avoid this sanction
4   where "the failure [to disclose] was substantially justified or is harmless."  *Id.* at 740; Fed.
5   R. Civ. P. 37(c)(1).  This does not mean courts *must* impose the sanction, but rather that
6   they are empowered to properly impose an exclusion sanction where the "noncompliant
7   party has failed to show that the discovery violation was either substantially justified or
8   harmless."  *Merchant*, 993 F.3d 733 at 740.

**III.   DISCUSSION**

Plaintiffs argue that the Court must strike Dr. Nelson's case-specific opinions as untimely for failing to comply with the MDL and this Court's scheduling orders.  (Doc. 177 at 7.)  Plaintiffs further argue that Defendants cannot show that their failure to comply with Rule 26 is "substantially justified or harmless" because (1) Defendants knew about the existence of pathological issues and still waited to file Dr. Nelson's corresponding report; and (2) Plaintiffs are prejudiced by "their inability to adequately defend and rebut against Dr. Nelson's opinions."  (Doc. 187 at 6, 10.)  Conversely, Defendants argue that any late disclosure is justified because Defendants "reasonably believed" that there were no pathology slides from Plaintiff King's surgery.  (Doc. 184 at 2.)  Defendants also argue that the late disclosure is harmless because "any prejudice befalling plaintiffs is largely of their own doing."  (*Id.* at 2.)

Several factors "guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willingness in not timely disclosing the evidence."  *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (internal citation omitted).  The Court will analyze these factors in turn.

First, the Court agrees with Plaintiffs that allowing Defendants to offer Dr. Nelson's case-specific pathology opinions would prejudice Plaintiff.  As Plaintiffs note, Defendants

disclosed Dr. Nelson's case-specific opinions with only two months left until trial. (Doc. 177 at 7.) To be able to adequately respond to these opinions, Plaintiffs argue that they would need to depose Dr. Nelson regarding those opinions, and potentially consult, retain and prepare a rebuttal witness within this short timeframe. *Ballard v. United States*, No. EDCV06-715-VAP(OPX), 2007 WL 4794101, at *4 (C.D. Cal. Aug. 28, 2007) (excluding untimely disclosed expert testimony to "prevent unfair surprise and dilatory tactics that preclude the opposing party from conducting meaningful expert discovery in preparation . . . for trial."). In other words, as Plaintiffs assert "there is simply not enough time for Plaintiffs to effectively defend and rebut Dr. Nelson's claims." (Doc. 177 at 8.)

As a final note on this factor, the Court finds Defendants argument that Dr. Nelson's case-specific reports are "critically important to this case" undercuts their position. (*Id.* at 3.) As Plaintiffs' note, if these reports are critical to the case, Plaintiffs would surely have to, *at a minimum*, depose Dr. Nelson again. (Doc. 187 at 10.) Conducting such discovery this close to the trial date unfairly prejudices Plaintiffs, and it is not their burden, nor the Court's, to mitigate a situation caused by Defendants. Therefore, the Court finds the first factor weighs in favor of striking Dr. Nelson's case-specific opinions.

Next, finding that there is prejudice to Plaintiffs, the Court must ask whether there is a curative measure to mitigate this prejudice. *See Brodeur*, 41 F.4th at 1192. Plaintiffs assert that because of how close to trial Defendants disclosed this information, there is no ability to cure the untimeliness. (Doc. 177 at 7.) Defendants offer no argument for how the untimely filing could be cured, and instead argue that there is no need to cure. (Doc. 184 at 2.) They claim that because only twenty-seven out of Dr. Nelson's seventy-six-page report pertains to his case specific opinions, there is "more than enough time for [P]laintiffs' to depose Dr. Nelson before trial on his case -specific opinions." (*Id.*) Even if this were true, the deposition is likely to only be one of the needed elements for Plaintiffs to prepare to rebut Dr. Nelson's opinions. The only "curative" measure the Court can imagine is to, once again, delay trial to allow Plaintiff ample time to respond to Dr. Nelson's case-specific opinions. *Schuette v. City of Phoenix*, 2010 WL 1253193, at *3 (D.

Ariz. Mar. 2010) ("Unexpected delays are common to litigation" however "[t]he unpredictable nature of litigation . . . does not excuse missed deadlines."). Therefore, the Court finds there is likely an inability to cure the prejudice to Plaintiffs if Dr. Nelson's case-specific opinions were not stricken.

In that same vein, the third factor—the likelihood of disruption to trial—also weighs in favor of striking Dr. Nelson's case specific opinions. This trial is set to begin on July 9, 2024. Defendants did not notify Plaintiffs, or the Court, of this opinion until April 19, 2024. The instant motion was not even ripe for the Court to decide upon until May 30, 2024. Defendants, as stated above, argue that Plaintiffs have enough time to prepare without disrupting trial. And although there may be a *possibility* for their preparation, the *likelihood* is that allowing Dr. Nelson's case-specific opinions will result in a disruption to the already set trial schedule, with the final trial management conference less than a month away. *See Mansur Properties LLC v. First Am. Title Ins. Co.*, 635 F. Supp. 3d 1116, 1134 (W.D. Wash. 2022) (finding untimely disclosure of expert opinion would "necessarily disrupt the trial date because [defendant] would have to be afforded an opportunity to conduct additional discovery . . . ."). Therefore, the Court finds Defendants' untimely disclosure has a high likelihood of disruption to trial.

The final factor asks the Court to consider whether Defendant acted with bad faith or an unwillingness to disclose this information. *See Brodeur*, 41 F.4th at 1192. The Court will not go so far as to say that Defendants acted with "bad faith" in their untimely disclosure of Dr. Nelson's case-specific opinions. However, bad faith is not a pre-requisite to excluding expert testimony due to late disclosure. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008). Here, despite having several opportunities to do so, Defendants failed to notify the Court of Mayo Clinic's alleged "errant" record keeping, or any other discovery issues, which they argue led to their delayed disclosure. In other words, Defendants could have brought these issues to the "Court's attention in a timely manner. Instead of doing so, [they] created their own remedy in the form of late supplemental disclosures after there was no further opportunity for any

discovery by the Plaintiffs to take place and the case was otherwise ready to [be tried]." *Leland v. Cnty. of Yavapai*, No. CV-17-8159-PCT-SPL (DMF), 2019 WL 1546998, at *4 (D. Ariz. Mar. 18, 2019), *report and recommendation adopted*, No. CV-17-08159-PCT-SPL, 2019 WL 1531874 (D. Ariz. Apr. 9, 2019). So, although the Court will not go so far as to find that Defendants acted in bad faith, it will find that they acted in poor form.

Defendants —instead of focusing on the four factors analyzed here—base the bulk of their argument around the late disclosure being "substantially justified" because of "Mayo Clinic's errant record-keeping" which led to late discovery of the pathology slides implicated here. (Doc, 184 at 1.) Additionally, Defendants argue that Plaintiff King's affidavit did not identify any pathology related issues, therefore they were unaware that such issues existed. (*Id.* at 4.) The Court, however, agrees with Plaintiffs that Plaintiff King's silence as to pathological issues does not excuse Defendants' failure to identify such issues. Plaintiffs provided the required notices, putting Defendants on notice that such pathological issues may be part of this case, and "[t]he onus was on Defendants to review the discovery provided and determine what, if any, additional information they needed and issue requests accordingly." (Doc. 187 at 9.)

Simply put, it is not the Court's job to squeeze in Defendants' eleventh-hour disclosure without ever being asked for an extension or notified of issues surrounding this disclosure when they first arose. *See Wong v. Regents of U. of California*, 410 F.3d 1052, 1062 (9th Cir. 2005) ("Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendants' Motion to Strike Case-Specific Opinions of Scott D. Nelson, M.D., Ph.D. (Doc. 177).

Dated this 14th day of June, 2024.

Honorable Susan M. Brnovich
United States District Judge